1

1

2                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
3

4     UNITED STATES OF AMERICA            :
                                          :
5                                         :
                        v.                :    Case 1:01-CR-336-04
6                                         :
      MARI ANTHONY,                       :
7          Defendant                      :

8
                                                          **FILED**
9                        TRANSCRIPT OF PROCEEDINGS      **HARRISBURG, PA**
                            SENTENCING HEARING
10                                                      AUG 1 4 2003

11                                                    MARY E. D'ANDREA, CLER
                                                     Per _____ C/16

12             BEFORE:    HON. SYLVIA H. RAMBO, Judge

13             DATE:      August 13, 2003

14             PLACE:     Courtroom Number Three
                          Federal Building
15                        Harrisburg, Pennsylvania

16

17
      COUNSEL PRESENT:
18
      WILLIAM BEHE, Assistant United States Attorney
19       For - United States of America

20    SANFORD ALAN KREVSKY, Esquire
         For - Defendant
21

22

23                                                        —
                                                Vicki L. Fox, RMR
24                                              Official Reporter

25

2

I N D E X

| Government's Witness | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| 1.  Brian Chapman | | | | |
| By Mr. Behe | 18 | -- | 25 | -- |
| By Mr. Krevsky | -- | 21 | -- | 26 |

3

1          THE COURT:   Good afternoon.

2          MR. BEHE:   Good afternoon, Your Honor.

3          MR. KREVSKY:   Good afternoon, Your Honor.

4          THE COURT:   This was the time and date scheduled

5    for sentencing and a hearing regarding objections to the

6    presentence report.   I think on a previous order, I wanted

7    evidence with regard to amounts of drugs, threats to a

8    confidential informant and possession of a weapon.

9          Yesterday, I guess we received a motion for a

10   continuance and a motion to withdraw a guilty plea.   The

11   first motion to withdraw the guilty plea in essence recited

12   the objections to the presentence report.   And those

13   objections are not satisfactory for the Court to consider a

14   withdrawal of the plea.

15         There was an allegation that the defendant did

16   not understand the crime to which he pled.   And then today,

17   I received an amended motion alleging in paragraph 12, an

18   amended motion for a withdrawal of the plea which now

19   asserts incompetency of counsel.   It is alleged that he was

20   told he would receive a recommended sentence of ten years.

21         Now I can only indicate this:   As far as the

22   allegation didn't know as to what he was pleading, I think

23   the record at the plea will substantially support the

24   allegations to which he pled.

25         He did at that time deny any involvement with

4

1    Tyrone Smith.  I think at that time, I indicated that there

2    would be a hearing, and that it also would possibly be

3    considered as relevant conduct.

4         With regard to the allegation of incompetency of

5    counsel, again, there is no transcript, but I know that this

6    Court invariably after the plea agreement is explained to

7    the defendant, I always ask have there been any promises

8    made to you that haven't been set forth in the plea

9    agreement.  I think that was answered in the negative.

10        Also, I ask -- and I am sure the record will

11   support the fact that I asked the defendant -- have there

12   been any promises made to you as to what your sentence would

13   be.  And I think that was replied in the negative.  After

14   which, I explain the potential sentences, statutory

15   sentences that could be received and also explain that there

16   are sentencing guidelines, but I didn't know what those

17   guideline would be until after the presentence report.  But

18   under no circumstances, could the guideline exceed the

19   statutory maximum.

20        Now, if I am correct, I don't see any basis for

21   the withdrawal of the plea based on his allegation that he

22   was promised a ten year sentence.

23        Mr. Krevsky, I will defer ruling on the motion to

24   withdraw the guilty plea if you wish to order the transcript

25   to disprove anything that the Court has said.  But at this

5

1    time, I am prepared to address the objections to the

2    presence report.

3                MR. KREVSKY:  Thank you.

4                THE COURT:  Okay?

5                MR. KREVSKY:  Thank, you Your Honor.  If it

6    please the Court, good afternoon.  On behalf of my client,

7    what I would ask the Court to do is as follows:  We have not

8    asked for a continuance before on the sentencing.  He is not

9    on the street.  He has been in jail.  The only prejudice

10   that would accrue I think would be to him because he is in

11   jail.  It is not like he is going to get out tomorrow

12   anyway.  He is going to be in for sometime anyway.  He

13   understands that.

14                I ask the Court to reconsider the continuation of

15   the sentencing.  I ask it for the following reasons --

16                THE COURT:  Why?  That is what I want to know

17   because you have been on this case for five months, and you

18   have had the presence report.  This case has been

19   continued.  This would be the third request for a

20   continuance, but they haven't all been yours.  I understand

21   that.

22                MR. KREVSKY:  Your Honor, here is the reason.  It

23   is sort of an awkward situation.  That is why I wanted to

24   address the Court beforehand.

25                My engagement in this case, Your Honor, was to

6

1   represent my client at sentencing.  There was recently some

2   discussions from the family and from my client of his

3   concern about what was happening, particularly since we had

4   made some objections to the presentence report and at least

5   in my opinion and my client's opinion, it wasn't going to

6   make a whole lot of difference in terms of what he was

7   exposed to.

8           At that point, my client and his family were

9   indicating to me that they wanted to perhaps withdraw the

10  guilty plea.

11          I was not engaged to do that until just the end

12  of last week.  I was involved in a trial for a whole week in

13  Dauphin County.  And I apologize.  That is why we filed the

14  motion as late as we did.

15          I would ask the Court if you would consider it, I

16  would like to look at the transcript from the guilty plea

17  colloquy.  Frankly, I just had the opportunity today to call

18  prior counsel so that I could explore with him what was

19  shared with my client in terms of the statement or lack of a

20  statement that he would -- that my client would be

21  recommended a certain sentence.

22          I guess what I am asking the Court to do -- I

23  have not filed anything dilatory about this case.  Basically

24  what we have tried to do is explain and get proof about some

25  of the things that my client had some problems with.

7

1          He wanted frankly, Your Honor, certain people to

2     come up on the stand, for example, and say to him yes, you

3     threatened me with a gun.  He felt that that wasn't going to

4     happen because it didn't happen.  So he was concerned about

5     that.

6          As I go through the response to the presentence

7     investigation, it appears that even if those things are

8     given credit by the Court and those reductions would be

9     made, that he still would be facing the same basic sentence.

10          THE COURT:  Because he is a career criminal.

11          MR. KREVSKY:  Correct.  The other option then,

12    Your Honor, is the acceptance of responsibility aspect of

13    it.  If you don't mind, I would like to try to get the Court

14    to do that.

15          And the other element, Your Honor, is the

16    elements on the motion to withdraw.  The most significant --

17          THE COURT:  Let's go back to the acceptance of

18    responsibility.  Why do you need time with that?

19          MR. KREVSKY:  For example, Your Honor, I believe

20    that it was not my client's intention not to accept

21    responsibility.  He pled to a certain charge.  Other than

22    the motion to suppress, he didn't make any beans about his

23    guilt.

24          Especially from my conversations with Mr. Behe,

25    there's indications that he is not accepting it, including

8

1    not testifying for the government in a trial which really

2    wasn't part of his negotiated plea.

3              THE COURT:  That I don't know anything about.

4              MR. KREVSKY:  Those are things that came to

5    light.  Another thing, Your Honor, there was I guess

6    apparently some indication that he was involved with the

7    conspiracy with Mr. Smith.  His understanding was that it

8    wasn't going to be used.  Except he understood that there

9    was going to be a hearing on it.

10             I am not sure he understood that it was going to

11   be the trial that was going to be the hearing.  I don't know

12   that he understood that's where the Court would get its

13   information from, if you are following what I am saying.

14             THE COURT:  I think he was told that he could

15   make objections, and that there would be a hearing on those

16   objections if it was necessary.

17             MR. KREVSKY:  I misunderstood you then.  I

18   thought you meant that there was going to be a separate

19   hearing on the issue of conspiracy and whether or not he was

20   involved in the conspiracy prior to the Court making a

21   determination on that.

22             THE COURT:  No.  The hearing would be on the

23   amount of the drugs that he was contesting, the threat to

24   the confidential informant and the possession of a weapon.

25   Now the amounts of the drugs could probably involve this

9

1    relevant conduct and his involvement with Smith and Pitts.

2            MR. BEHE:  And Toronto Dykes and Marcus Carter

3            THE COURT:  The ones he is objecting to.  I

4    anticipated that those would be addressed in a sentencing

5    hearing.  Now I don't know how you intended to do that.

6            MR. BEHE:  Well, as Your Honor knows, the

7    sentencing guidelines and statutory provisions of Title 18

8    allow for the Court to consider information from whatever

9    source as long as there is an indicia of reliability to it.

10           The individuals who testified or whose

11   information was contained in the presentence report

12   testified under oath before Your Honor in a proceeding about

13   their involvement with Tyrone Smith and this defendant.

14           THE COURT:  The transcripts of the trial --

15           MR. BEHE:  Yes.

16           THE COURT:  -- would be relevant to that.

17           MR. BEHE:  And they have been prepared by the

18   court reporter.  They have been filed with the Court.  They

19   are available.  I don't know whether Mr. Krevsky has known

20   that or had the opportunity to review them.

21           But that is the extent I would be rely on with

22   the exception of the confidential informant Mr. Chapman who

23   was threatened.  He also testified to that at the trial.  I

24   had him brought here today simply for that purpose, if

25   necessary.

1          I guess my bottom line was like Mr. Krevsky has

2     stated, even if the Court discounts the information about

3     the drug weights and the information about the gun, and the

4     information about obstruction, he is still at 360 to life.

5          And if the Court accepts the drug weights, and

6     the gun, and the threat to the informant, he is at 360 to

7     life.

8          THE COURT:  So you want additional time --

9          MR. KREVSKY:  Yes.

10          THE COURT:  -- on the motion to withdraw the

11     plea?

12          MR. KREVSKY:  Yes.

13          THE COURT:  So that you can look at the

14     transcript of the plea colloquy?

15          MR. KREVSKY:  Yes.  The other thing is I had

16     prior discussions with Mr. Behe.  And I thought that the

17     witnesses would be here.  I did not know that they intended

18     to introduce the testimony as proof of the allegations that

19     were contained in the presentence investigation.

20          I think that was -- I thought that was why the

21     government had asked for the continuance before, to make

22     such arrangements to have the witnesses present.  I

23     understand Mr. Carter is here, but I think the other

24     fellow --

25          MR. BEHE:  Chapman is here.

11

1          MR. KREVSKY:  Mr. Carter I thought was going to

2   be here also.

3          THE COURT:  Did he testify?

4          MR. BEHE:  Yes, he did.

5          THE COURT:  Well, the transcripts are on record.

6          MR. KREVSKY:  I guess basically, Your Honor, I

7   guess the most important thing that I am asking you to do is

8   allow me the time.  And again, Judge, I tried to avoid -- I

9   even talked to Mr. Behe about this.

10          I tried to avoid having witnesses brought in and

11   the Court convening today because we had these things.  If

12   you give me some opportunity to do that, it may be a moot

13   point.

14          The only thing I would like to bring to the Court

15   if the other matters resolve themselves would be two-fold.

16   That would be the acceptance of responsibility issue,

17   whether the Court would consider that, and finally the

18   ineffective assistance of counsel.

19          THE COURT:  Well, did you see his letter that he

20   wrote?

21          MR. KREVSKY:  I did, Your Honor.

22          THE COURT:  That doesn't say much at all about

23   acceptance of responsibility.  It is a know nothing letter.

24   Let me find it.

25          MR. BEHE:  Your Honor, it is attached to the end

1       of the amended presentence investigation report.

2               THE COURT:  In regards to my acceptance of

3       responsibility, on April 24, '02, I take full responsibility

4       for my ignorance in this matter.  I am remorseful for my bad

5       deeds.  I was dealing with a broken spirit, a broken heart,

6       so many personal issues.  Also note that my issues does not

7       mean possessed drugs.  I want it be known.  Sorry for taking

8       my family and kids through this situation, also the courts.

9       I ask for leniency for my family's sake and my kids, also

10      myself and my new found strong belief.  And that is the

11      Lord.  So I leave it in his hands.

12              He doesn't say much of anything about accepting

13      responsibility for his unlawful conduct.

14              MR. KREVSKY:  I think what he is saying here,

15      Judge, he said two things.  At least one thing to me, and

16      the other one I will interpret from what I know from going

17      over this.

18              The one thing -- and I think the Court is aware

19      of this.  Not specifically in relation to Mr. Anthony, but

20      often times, the attorneys will tell the client not to put a

21      whole lot of stuff in that letter.  And he has indicated to

22      me that his attorney told him to make it very, very short

23      and not to say a whole lot.  That is the one thing.

24              The second thing is, Judge, I am not sure you

25      misunderstood it.  If you did, I apologize.  So many

13

1    personal issues, I also know that my issue does not mean

2    possessed drugs, I think what he is talking about there is

3    that even though I was having issues, it does not mean that

4    that condones my involvement with drugs.  I think that is

5    what he is saying; because I had issues does not make it

6    right that I got involved in drugs.

7              THE COURT:  His denial of the relevant conduct

8    may also deny him acceptance of responsibility.  I will let

9    you check.  You can brief that issue, whether denial of

10   relevant conduct can also result in denial --

11             MR. BEHE:  I would just like to point out that if

12   Mr. Anthony's lawyer told him to keep it short, the faxed

13   copy of the letter I have was May 15th, and Mr. Krevsky was

14   in the case before May 15th.

15             Are you saying you told him to keep it short?

16             MR. KREVSKY:  I did not.  I think the letter was

17   written beforehand.  Correct?

18             THE DEFENDANT:  Yes.

19             MR. KREVSKY:  I think what he had said to me was

20   that the letter was written I guess, but it never got to

21   them?  Is that what happened?

22             THE DEFENDANT:  I asked which counsel at the time

23   that Mr. Rude told me to write the letter.  He sent me a

24   letter saying write a brief acceptance of responsibility.

25   At the time I asked which counsel?

14

1          THE COURT:  My only concern about this is that

2     you had this report and could have made an argument

3     concerning acceptance of responsibility and briefed it.

4          You say you still want to argue more about that?

5     Your issue is withdrawal of the guilty plea, and to argue

6     again acceptance of responsibility?

7          MR. KREVSKY:  Well --

8          THE COURT:  And the amount of the drugs.

9          MR. KREVSKY:  I do want to argue acceptance of

10    responsibility because no matter what happens, Your Honor, I

11    think if the Court would be inclined to give him acceptance

12    of responsibility, then whatever happens, even if he used

13    the guidelines as they would involve the career criminal or

14    if you use the guidelines as we would recompute them, either

15    way, he is looking at the 360.

16          But if you give him the acceptance of

17    responsibility, that will substantially lower what he would

18    be facing.  So I would like to make sure the Court and

19    Probation is real clear that my client is accepting

20    responsibility for what he did.

21          THE COURT:  You had five months to do this,

22    Mr. Krevsky.  That is my concern.

23          MR. KREVSKY:  We have tried -- I have tried that

24    through objections, Your Honor.  The other issue, Judge, is

25    the other issue involving whether or not the motion to

15

1   withdraw would be appropriate.  And that's come up rather

2   quickly to me.

3            MR. BEHE:  I also think Mr. Krevsky is incorrect,

4   that it would impact on his client.  It isn't just simply a

5   question if I get acceptance, it doesn't matter to me about

6   all those other matters.  It does.

7            Because if the Court finds all those other

8   matters, he is at a level 42.  If you give him two levels

9   for the acceptance, he still is at 360 to life because it is

10  not until you get below a level 37 that you get into a lower

11  range.

12           So to the extent that the only thing to argue

13  about is acceptance, I don't think that gets him anywhere

14  unless he addresses all those other objections in some

15  fashion which means he has to review the transcripts of the

16  trial.

17           Because if your argument was it doesn't matter as

18  long as I get acceptance, I think it does.  I may be

19  mistaken, but he is at a level 42 now.  If you reduce it for

20  acceptance of two levels, that is 360 to life.  If you

21  reduced it five levels, it is 360 to life.

22           The only way his client benefits is if

23  Mr. Krevsky wins all his objection to the drug amounts, the

24  guns, the threat to the informant and gets acceptance

25  because then it would be at a level 37.  Two levels off for

16

1    acceptance, then he would be down into a lower range.

2         THE COURT:  My only concern, Mr. Behe, is since

3    he wanted the hearing on those objections, and that it's the

4    government's need to show by a preponderance of the evidence

5    whether it might be incumbent upon you to show where in the

6    transcript these things are supported.

7         MR. BEHE:  I have the transcripts available.

8         THE COURT:  I am not too sure he needs to go

9    through it.  I think you need to show where you can support

10   each of these objections.

11        MR. BEHE:  I can support the objections with the

12   testimony of Marcus Carter and with the testimony of Brian

13   Chapman with regard to the gun and the threat as to the

14   informant.  Mr. Chapman specifically spoke of that.

15        THE COURT:  Who is here today?

16        MR. BEHE:  Chapman.

17        THE COURT:  I would suggest while he is here, we

18   use him now for that issue rather than having to bring him

19   back.  It is obvious I am going to convene here because you

20   are still going to argue the withdrawal of the guilty plea.

21   You will have to order that transcript from Vicki because I

22   don't think there is one.

23        MR. BEHE:  We need a moment.

24        THE COURT:  Now on the amounts and possession.

25   Who is going to testify on the possession of the weapon?

17

1      MR. BEHE:  I had nobody here to testify.

2      THE COURT:  Is that in the transcript?

3      MR. BEHE:  I am certain it's there with Marcus

4 Carter.  I will check on that.

5      THE COURT:  So the amounts and the possession of

6 the gun.  Does that take care of your objection except for

7 the acceptance of responsibility?

8      MR. KREVSKY:  Yes, Your Honor.

9      THE COURT:  If the transcript supports that by a

10 preponderance of the evidence, I am not going to have him

11 bring any witnesses in.

12      MR. KREVSKY:  I understand.

13      THE COURT:  Those people were under oath and

14 subject to cross-examination.

15      MR. KREVSKY:  I understand.

16      THE COURT:  I will let you further argue the

17 issue of acceptance of responsibility, but I just don't know

18 how it is going to change the ground level on this.

19      MR. KREVSKY:  Okay.  Needless to say, I

20 appreciate the opportunity.  Again, Judge, I tried to avoid

21 getting in this position for myself and my client.  But

22 really, like I say, I don't think the government -- except

23 for the fact that they brought this gentleman in and they

24 had to convene court, I tried the best I could.

25

Chapman - Direct                                    18

1          THE COURT:  What I am saying is if the transcript

2     by a preponderance of the evidence supports the amount of

3     the drugs, if the testimony supports the weapon and the

4     informant here satisfies by a preponderance of the evidence

5     that he was threatened, the acceptance of responsibility

6     argument is moot because it is not going to reduce it.

7          MR. BEHE:  Your Honor, if the only thing Your

8     Honor accepted was Mr. Chapman's testimony, that would make

9     it a level 39 because I think it is a two level upward

10    adjustment.  And if he gets acceptance, that would only take

11    it down to 37, which is still 360 to life.

12         THE COURT:  Okay.  Let's at least hear his

13    testimony.  Let's see what happens with regard to the

14    testimony today.  I will issue an appropriate order of what

15    issues I think remain and when we will have another hearing

16    on sentencing.

17         MR. KREVSKY:  Thank you, Your Honor.

18         THE COURT:  You might as well go back to counsel

19    table.

20

21         BRIAN CHAPMAN, called as a witness, being duly

22    sworn, testified as follows:

23

24         THE CLERK:  Would you state your name, please?

25    A     Brian Chapman.

1          DIRECT EXAMINATION

2     BY MR. BEHE:

3     Q     Good afternoon, Mr. Chapman.

4     A     Good afternoon.

5     Q     Would you please tell us your age?

6     A     I am 22.

7     Q     Your date of birth?

8     A     8-20-80, August 20, 1980.

9     Q     You are currently in state custody; is that correct?

10    A     Yes, sir; at Camp Hill.

11    Q     You are serving a sentence for drug conviction?

12    A     Yes, sir.

13    Q     What is your sentence?

14    A     One year minimum to five year maximum.

15    Q     That was imposed by the Dauphin County Court of Common

16    Pleas?

17    A     Yes, sir.

18    Q     You testified on behalf of the United States at the

19    trial of Tyrone Smith.  Do you recall that?

20    A     Yes, sir.

21    Q     At one point during your testimony, you told the

22    jurors about being threatened by an individual that you

23    would be killed if you testified at the trial or against

24    Tyrone Smith; do you recall that?

25    A     Yes, sir.

1    Q    Do you see the individual in court today who

2    threatened you?

3    A    Yes, sir.

4    Q    Could you point him out to the Court, please?

5    A    He is right there with the purplish, burgundy shirt

6    on.

7                MR. BEHE:  For the record identifying Mari

8    Anthony.

9    BY MR. BEHE:

10    Q    Could you tell us, again, please what happened during

11    that incident?

12    A    I went to the store off of 13th and Derry.  They call

13    it The All Nighter.  It was around like one o'clock in the

14    morning.  I was driving my friend's car, and I had pulled up

15    to the store.

16                Next thing I know this black Mercedes pulled up

17    beside me, but it was on the other side of the street.  And

18    a white Lexus and a brown Thunderbird pulled up behind me.

19                Then I went inside the store.  And then a guy

20    came inside the store.  And he had a hooded jacket on.  And

21    then he says so what's up?  I looked over and seen that it

22    was Mari.  And then he said what's up?  I said -- I just

23    shrugged my shoulders.

24                I went outside the store.  And then him and two

25    other guys from the other cars, they came out.  They

Chapman - Cross                    21

1    approached me.  And Mari was like it's f-cd up what you did

2    to my cousin.  And we could have you killed if you testify.

3    He said that the guy who killed me, that he can leave the

4    country and nobody would know.

5                Then the other two guys, they left and went

6    inside the car and kept circling around the store.  Mari

7    asked me to get inside his car to go for a ride.  I said no.

8    He was just talking to me for a little bit more.  And he

9    said this is the first and last time we are going to have

10   this talk.  And I just got inside my car, and I left.

11   Q     Did you report that to anybody with the Dauphin County

12   Drug Task Force or the Drug Enforcement Administration?

13   A     I think a week and a half or two weeks later, I did.

14   Q     To who, somebody from the Task Force?

15   A     Yes.

16   Q     You are certain that it was this individual seated in

17   court?

18   A     Yes, I am certain.

19               MR. BEHE:  Those are all the questions I have.

20               THE COURT:  Cross-examine.

21               MR. KREVSKY:  Thank you.

22                          CROSS-EXAMINATION

23   BY MR. KREVSKY:

24   Q     Good afternoon, Mr. Chapman.  My name is Sanford

25   Krevsky.  I represent Mr. Anthony.

Chapman - Cross                                22

1          You are 20 years old?

2     A    22, yes, sir.

3     Q    Are you from Harrisburg?

4     A    Yes.

5     Q    Born and raised here, sir?

6     A    Yes, sir.

7     Q    For how many of your 22 years have you known

8     Mr. Anthony?

9     A    Probably, I would say I really don't know him that

10    well.  I just saw him when I went to go meet his cousin.  I

11    would say for maybe like three years, but I never like hung

12    out with him or anything.

13    Q    So for about three years you knew him?

14    A    Yes.

15    Q    During that period of time, Mr. Chapman, how many

16    times had you seen my client?

17    A    I really can't recall.  But a lot of times.

18    Q    And you indicated, sir, that at that point -- and I

19    say at that point, the point that you were at the all night

20    store, my client and two other individuals approached you;

21    is that correct?

22    A    Yes.  Once I came outside the store, the other two

23    guys approached me with Mari.

24    Q    Who were the other two guys?

25    A    I didn't even know them.

1    Q    Mr. Chapman, after this incident, besides the

2    discussion outside the store, when was the next time you saw

3    my client?

4    A    I saw him the next day.  He drove down on 13th Street,

5    and I saw him.

6    Q    Did you talk to him, meet with him?

7    A    No.  He just drove past, and he looked over at me.

8    Q    After that, sir, when was the next contact that you

9    had with my client?

10    A    None.

11    Q    If you recall, did you say that my client had a hood

12    on?  Is that what you are saying?

13    A    Yes, sir.  He had on a brown jacket, and it had a hood

14    on it.  He had a hood on when he came inside of the store.

15    Q    Were you alone?

16    A    Yes, I was.

17    Q    And the store was open?

18    A    Yeah, open the whole night.  That is why it is called

19    The All Nighter.

20    Q    I apologize if you did tell us this, but did you say

21    when this happened?

22    A    No, I didn't.

23    Q    Could you?

24    A    I would say maybe in like the Fall of 2002.

25    Q    The Fall of 2002?

1    A    I think, yeah, somewhere around there.

2    Q    Just so we are clear, right now it is August of 2003.

3    You are saying sometime around I guess September, October,

4    November of 2002?

5    A    Somewhere around there.

6    Q    And besides yourself and Mr. Anthony, was there

7    anybody else in the store?

8    A    The person who worked there, and some other person was

9    buying something.

10    Q    It is your testimony that Mr. Anthony said this with

11    those people there?

12    A    No.   This is what happened.   When I walked out of the

13    store, he told me to come here so he could talk to me.   Then

14    those three guys -- him and the other two guys, they

15    surrounded me.   That is when he was saying the stuff to me.

16    He didn't say it inside the store.   He said it outside the

17    store.

18    Q    I understand.   So nothing basically was said --

19    A    Inside of the store.

20    Q    And the fact that he was talking about that it was

21    f-ed up, was that inside the store or outside the store?

22    A    Excuse me?

23    Q    The fact that he told you that this is f-ed up what

24    you did to my cousin?

25    A    That was outside of the store.

Chapman - Redirect                                    25

1    Q    All the relevant conversation was outside of the

2    store?

3    A    Yes, sir.

4    Q    The only people around would have been yourself, my

5    client and the other two individuals?

6    A    When he started talking to me, the other two people

7    that got inside their car.  They was like circling around

8    the store.  So it was just me and him talking.

9    Q    The other people had gone?

10   A    Yes.  They got inside their car.

11            MR. KREVSKY:  I beg the Court's indulgence,

12   please.  That is all I have, Mr. Chapman.  Thank you.

13            THE COURT:  Redirect?

14            MR. BEHE:  Yes.

15                    REDIRECT EXAMINATION

16   BY MR. BEHE:

17   Q    Mr. Chapman, regardless of when this accident

18   happened, you reported it shortly afterwards to law

19   enforcement; is that correct?

20   A    Yes, sir.

21   Q    That would give us a more precise date of when this

22   occurred?

23   A    Yes, sir.

24            MR. BEHE:  That is all I have.

25            THE COURT:  Recross?

Chapman - Recross                                    26

RECROSS EXAMINATION

BY MR. KREVSKY:

Q    What was it that made you go to the Police at that point?

A    Because he threatened me with my life.

Q    I guess what I am asking is why did you wait a week?

A    Because I was just scared.  I was just scared.

Q    You were scared to go to the Police?

A    Yeah.

Q    What made you change your mind?

A    So I just went over there.  I had to go down there and talk to them for something else, and I told him.

        MR. KREVSKY:  Thank you, sir.

        THE COURT:  You may step down.  We will defer sentencing.  I will issue an order when the date is and what will be addressed at that hearing.  Court is adjourned.

        THE CLERK:  Court is adjourned.

        (Whereupon, the proceedings were concluded.)

27

1        I hereby certify that the proceedings and

2    evidence are contained fully and accurately in the notes

3    taken by me on the trial of the above cause, and that this

4    copy is a correct transcript of the same.

5

6                          *Vicki A. Fox, RMR*

7                          Vicki L. Fox, RMR

8                          Official Reporter

9

10

11        The foregoing certification of this transcript

12    does not apply to any reproduction by any means unless under

13    the direct control and/or supervision of the certifying

14    reporter.

15

16

17

18

19

20

21

22

23

24

25