NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-3834
_____

UNITED STATES OF AMERICA
v.

MARI ANTHONY,
*Appellant*

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 01-cr-00336-04)
District Judge: Honorable Sylvia H. Rambo

_____

Submitted Under Third Circuit LAR 34.1(a)
October 5, 2004
Before: SLOVITER, BECKER, and STAPLETON, *Circuit Judges*

(Filed: October 12, 2004)

_____

OPINION
_____

BECKER, *Circuit Judge*.

   This is an appeal by defendant Mari Anthony from a judgment in a criminal case entered pursuant to a bargained-for conditional guilty plea. That plea preserved Anthony's right to appeal the District Court's denial of his motion to suppress evidence

recovered from a van which Anthony and co-defendant Lawrence Johnson were occupying when they were arrested on April 24, 2002, as well as evidence recovered after the search of Anthony's home, pursuant to a search warrant, that same evening and into the following morning.  In addition to the adverse suppression ruling, Anthony alleges ineffective assistance of counsel and challenges the District Court's refusal to allow him to withdraw his guilty plea on the grounds that his counsel told him that he was pleading to a different crime, and that if he pled guilty he would receive a sentence of ten to fourteen years.  In fact, he received a thirty-year sentence.  The District Court explored the plea withdrawal matter at a hearing through receipt of documentary evidence; the Court also made findings.  Accordingly this is a matter that can be reviewed now without waiting for a proceeding under 28 U.S.C. § 2255.  Because the parties are fully familiar with the background facts and procedural history we need not set them forth, and limit our discussion to our *ratio decidendi*.  For the reasons that follow, we affirm.

I.

The District Court denied the motion to suppress to suppress on the grounds that, even if the warrantless search of the van was illegal, the resulting evidence was nonetheless admissible on the basis of the inevitable discovery exception to the exclusionary rule.  The Court reasoned that an inventory search of the van would necessarily have been conducted, given (1) the lawful traffic stop of the van (which had a license plate on it that belonged to a different vehicle); (2) the propriety of the arrest of

Anthony, for whom it was learned there was an outstanding arrest warrant; and (3) the propriety of the arrest of Johnson, who struggled with the police officers who were attempting to pat him down at the scene of the vehicle stop, causing drugs concealed on his person to spill out onto the roadway, and for whom an arrest warrant was also discovered. The vehicle would have been towed to the Federal Building in Harrisburg, which would have required police to open the black duffle bag, leading to the inevitable discovery of the bag's illegal contents. Under the inevitable discovery exception, a court may admit illegally obtained evidence if the evidence inevitably would have been discovered through independent, lawful means. *See Nix v. Williams*, 467 U.S. 431, 443-44 (1984).

While this reasoning is unexceptionable, the fact is that the initial search was not illegal. Rather, in our view, the search along the roadside was proper as a search incident to a lawful arrest. The initial police stop was unquestionably proper, because the wrong license plate was on the vehicle. Nor was there a challenge to the fact that there was a warrant outstanding for Anthony's arrest; hence, he was property arrested. Moreover, Johnson, the other occupant of the vehicle, was taken into custody because when he was being searched he struggled with the police, causing drugs to spill all over the roadside; there was also an outstanding arrest warrant for him. It is clear that when an individual who is an occupant of a vehicle is taken into custody, the police have the authority to search the entire vehicle, including containers therein, as a search incident to that lawful

arrest. *See Thornton v. United States*, 541 U.S. ___, 1245 S. Ct. 2127 (2004) (rejecting the argument that *New York v. Belton*, 453 U.S. 454 (1981), was limited to situations where the officer initiates contact with an arrestee while he was still an occupant of the car). Noting the volatility of such situations, the *Thornton* court held that it makes no difference if the police initiate contact with the individual in the vehicle or when the individual is already outside of the vehicle, and that *Belton* "allows police to search the passenger compartment of a vehicle incident to a lawful custodial arrest of both 'occupants' and 'recent occupants.'" *Thornton*, 124 S. Ct. at 2131 (citing *Belton*, 453 U.S. at 460). The motion to suppress was thus properly denied.

## II.

Anthony's claim for withdrawal of his guilty plea is predicated on his testimony that his prior counsel told him that if he pleaded guilty, he would face a ten-year minimum sentence (and his actual sentence would be ten years), and that if he went to trial and lost, he would get a twenty to twenty-five year sentence. Anthony also testified that counsel tried to pressure him into taking the plea, and that at no time did counsel ever tell him that there was a possibility of being sentenced to thirty years in prison. Finally, Anthony contends that counsel misinformed him about the charge he was pleading to.

Anthony's claim falters, however, on his own testimony at the sentencing proceedings that: (1) he asked his attorney if there was a ten-year cap on his potential sentence and that his attorney informed him that the government said that there was not;

4

(2) his lawyer told him not that he was getting a ten-year sentence, but that he would push for the "10 year minimum"; (3) when he spoke to his lawyer prior to entering his plea of guilty, he asked if he would wind up getting an additional two or three years above the ten-year mandatory minimum, and his lawyer replied "I would be lucky to get that"; (4) his lawyer told him that, if he accepted the plea agreement, the United States could not "put the 20-year mandatory minimum paper" in; (5) his attorney told him he would be lucky if he got a sentence as low as fourteen years but, despite that advice, he decided to plead guilty anyway; and (6) he and his lawyer talked about his offense level under the guidelines being at possibly a level 34 with a possible six-level increase on top of that. Additionally, prior counsel, Mr. Rude, stated in a letter introduced at the hearing, that he did not advise Anthony that the government would recommend a sentence of ten years; that he advised him that he was facing a ten-year mandatory sentence, which would be the minimum sentence that he faced; and that he told Anthony that he would be "lucky" to keep his sentence around fourteen years.

Finally, at the change of plea proceeding, when represented by Mr. Rude, Anthony confirmed that he had been advised that the potential penalty was up to life imprisonment and that he faced a mandatory minimum term of imprisonment of ten years. At that same proceeding, Anthony swore under oath that he had not been promised by anyone what his sentence would be. Moreover, the court asked Anthony if he understood that "the minimum sentence you could receive in this would be 10 years, the maximum could be

5

life," and that "if anyone has suggested to you what your guideline sentence would be and if it differs from what the court finds, you cannot withdraw your guilty plea." To both inquiries Anthony responded that he understood what the court was advising him. While Anthony attempted to limit his involvement in drug trafficking to what transpired on April 24, 2002, the court advised him that the count to which he pled guilty to embraced a larger period of time and that if "I find that you were involved in more than this [April 24, 2002, transaction], you realize it is going to impact on your sentence, the amounts?" To this Anthony responded "Yes, ma'am."

Under these circumstances, the District Court did not abuse its discretion in denying the motion to withdraw the guilty plea.

The judgment of the District Court will be affirmed.